IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NOS. 06-204-1** |
| | : | **07-796-1** |
| **OMAR TEAGLE, _et al._,** | : | |
| _Defendants._ | : | **FILED UNDER SEAL** |

NITZA I. QUIÑONES ALEJANDRO, J.                                                   JULY 1, 2026

## MEMORANDUM OPINION

**INTRODUCTION**

In two cases that were consolidated, Defendant Omar Teagle, ("Defendant"), pled guilty

to one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C.

§ 846 (Criminal Action Number 06-204) and to one count of conspiracy to commit money

laundering in violation of 18 U.S.C. § 1956(h) (Criminal Action Number 07-796), and was,

subsequently, sentenced to a term of seventy-two months of imprisonment on each count, to run

concurrently, followed by five years of supervised release.

Before this Court is Defendant's motion for relief under 28 U.S.C. § 2255,[1] in which he

seeks to vacate, set aside, or correct his sentence and conviction, (Doc. 272), and the Government's

response in opposition, (Doc. 278).   In the motion to vacate, Defendant contends that newly

discovered evidence demonstrates that his conviction was based on false evidence and perjured

testimony of key witnesses during the investigation and prosecution of his case; and that the

prosecutors failed to disclose evidence of police misconduct in violation of _Brady v. Maryland_,

373 U.S. 83 (1963).   Consistent with the claims of new evidence and prosecutorial misconduct,

---

[1]        This motion was filed _only_ in the 2006 case.

Defendant also seeks a new trial.  The issues have been fully briefed and are ripe for disposition.[2]

For the reasons set forth, Defendant's motion is denied.

## BACKGROUND

To address the issues presented in Defendant's motion, a brief narrative of the relevant facts, gleaned from the pleadings filed and procedural history, is helpful:

### 2006/2007 Criminal Cases (Case No. 06-204 and Case No. 07-796)

On April 26, 2006, a federal grand jury returned a one-count indictment charging Defendant, and others, with one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846.  (Case No. 06-204, Doc. 44).  On October 4, 2006, a superseding indictment was filed which charged Defendant with conspiracy to distribute cocaine, one count of distribution of crack cocaine, one count of distribution of cocaine in violation of 21 U.S.C. § 846(a)(1), and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), (Doc. 69).  On January 10, 2027, a second superseding indictment was filed which added an addition count for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  (Doc. 73).

On December 26, 2007, in a separate action, Defendant was charged by information with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  (Case No. 07-796, Doc. 1).

On December 27, 2007, a motion to consolidate these two matters for plea proceedings and sentence, (Case No. 07-796, Doc. 2), was granted by the Honorable R. Barclay Surrick.  As such, Defendant signed one guilty plea agreement for both cases.  As to the 2007 information, Defendant's plea agreement contained a waiver of prosecution by indictment and the following waiver of rights for both cases, *to wit*:

8. In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.  The

---

[2]    This Court also considered Defendant's reply brief and supplemental documents.  (Doc. 279, 280).  Additionally, although filed under seal, this Court references portions of the guilty plea agreement and portions of the change of plea hearing transcript that are relevant to Defendant's claims under Section 2255.

waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

b. If the government does not appeal, then, notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims:

(1) that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 5 above;

(2) that the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;

(3) that the sentencing judge, exercising the Court's discretion pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court; and/or

(4) challenging the Court's ruling on defendant's pre-trial motion to suppress wire communications. The parties further agree that, in the event, the government files a departure motion under U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e) and/or Rule 35, the defendant's right to appeal the Court's ruling concerning the defendant's motion to suppress shall be revoked, and the defendant will move to dismiss any pending appeal to the extent it challenges that ruling.

If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

The defendant also waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5. U.S.C. § 552a.

(Case No. 06-204, Doc. 165 at pp. 5-6; Case No. 07-796, Doc. 5 at pp. 5-6).

3

As noted, at the change of plea hearing, Defendant entered a plea of guilty to one count of conspiracy to distribute five kilograms or more of cocaine. (*see* Case No. 06-204, Doc. 164, 165, 231), and one count of conspiracy to commit money laundering.  (*See* Case No. 07-796, Doc. 3, 4, 5, 24).  While under oath, Defendant responded and testified to the following:

THE COURT:    Are you under the influence of alcohol today?

DEFENDANT:    No, I'm not.

THE COURT:    Under the influence of drugs?

DEFENDANT:    No, I'm not.

THE COURT:    On any medication?

DEFENDANT:    No, I'm not.

THE COURT:    Are you under the care of a psychologist or psychiatrist?

DEFENDANT:    No, I'm not.

THE COURT:    Is there any reason at all, Mr. Teagle, why you might have difficulty understanding these proceedings?

DEFENDANT:    No, Your Honor.

THE COURT:    Are you represented by Mr. Cannick[3] in this matter?

DEFENDANT:    Yes, I am.

THE COURT:    And you've been represented by him --

DEFENDANT:    Yes, Your Honor.

THE COURT:    -- from the beginning?

DEFENDANT:    No, not at the beginning.

MR. CANNICK:    Not from the beginning, Your Honor, but early on in the proceedings.

THE COURT:    Very early in the proceedings. All right. You've had an opportunity to discuss this matter with him in detail?

---

3    Defense counsel at Defendant's change of plea hearing.

DEFENDANT:    Yes, Your Honor.

THE COURT:    Are you satisfied with the representation you're getting?

DEFENDANT:    Yes, I am.

THE COURT:    Are you satisfied that Mr. Cannick could properly represent you if you decided you wanted to go to trial?

DEFENDANT:    Yes, Your Honor.

. . . .

THE COURT:    Did you read this [plea agreement] before you signed it?

DEFENDANT:    Yes, I did, Your Honor.

THE COURT:    Did you understand each and every paragraph of it when you signed it?

DEFENDANT:    Yes, I did, Your Honor.

THE COURT:    Did you sign it of your own free will?

DEFENDANT:    Yes, I did, Your Honor.

THE COURT:    Anybody pressure you to make you do it?

DEFENDANT:    No.

THE COURT:    Do you have any questions at all about this plea agreement that you've signed?

DEFENDANT:    No, Your Honor.

THE COURT:    There is a paragraph in this plea agreement, Mr. Teagle, paragraph number eight which -- which is a waiver of appeal rights. Do you remember reading that?

DEFENDANT:    Yes, I did.

THE COURT:    Did you talk to Mr. Cannick about that?

DEFENDANT:    Yes, I did.

THE COURT:    Do you understand that provision?

DEFENDANT:        Yes, I do, Your Honor.

. . . .

THE COURT:        Knowing all of this, you still want to admit your guilt here this afternoon?

DEFENDANT:        Yes, Your Honor.

THE COURT:        Are you entering this plea of your own free will, Mr. Teagle?

DEFENDANT:        Yes, Your Honor.

THE COURT:        Did anybody pressure you to make you do it?

DEFENDANT:        No.

THE COURT:        Did anybody promise you anything in return for this plea?

DEFENDANT:        No, Your Honor.

THE COURT:        You know what you're doing?

DEFENDANT:        Yes.

THE COURT:        Any questions about what you're doing?

DEFENDANT:        No, Your Honor.

THE COURT:        Do you understand that if you have questions, now's the time to ask them not later?

DEFENDANT:        Yes, I do, Your Honor.

. . . .

THE COURT:        Mr. Tsao,[4] do you want to give me the factual basis for the plea?

MR. TSAO:         Certainly, Your Honor.

                  The -- the defendant and the Government, I believe, have agreed that the factual basis set forth in the change of plea memorandum which has been made part of the -- part of the

---

4         Counsel for the Government at Defendant's change of plea hearing.

6

record will serve as the factual basis for the plea. So, I'm going to summarize the facts, Your Honor.

THE COURT:    All right.

MR. TSAO:    In -- as early as November, 2005, Your Honor, the defendant, Omar Teagle, along with others charged in the second superseding indictment made arrangements to purchase a large quantity of cocaine from the source of supply in California.

In early November or late December, 2005, Omar Teagle, Roland Alburg, and Ramon Alburg agreed to pool their money together to purchase this cocaine from California. Ultimately, Roland Alburg provided a million -- approximately a million dollars in cash while Raymond [sic] Alburg provided approximately a million and a half dollars in cash.

Your Honor, as it turned out, the defendant, Omar Teagle, we don't have any evidence that he provided additional money of his own but he was part of the conspiracy though to have that money, the two and a half million dollars in total pooled together and sent out to California to purchase the more than 150 kilograms of cocaine which was ultimately transported back from California to the East Coast.

That money was provided to -- to Donnell Ball by Raoul [sic] Alburg. Donnell Ball then made arrangements for it to be transported out to California and paid to the source of supply.

A problem arose with the cocaine shipment coming from California to -- back to the East Coast. The members of the conspiracy charged in the indictment agreed that Raoul [sic] Alburg would drive the cocaine back from California in a recreational vehicle with a trailer attached to it.

On or about March 22, 2026, Raoul [sic] Alburg traveled out of California. Out there, he met Donnell Ball. Raoul [sic] Alburg picked up the cocaine which -- which totaled approximately 210 kilograms and then drove the cocaine back from California to New Jersey arriving on or about March 28, 2006.

During the entire time, Your Honor, the -- all of the members of the conspiracy were caught on audio tape on recorded

7

|  | telephone conversations discussing the -- the conspiracy to have the -- the cocaine transported back from California to the East Coast. |
|---|---|
|  | On March 29, Roland Alburg drove from Somerset -- drove from New York to Somerset, New Jersey, and picked up his share, the 55 kilo -- his share of the shipment, which was 55 kilograms of cocaine.  Later on that day, a search warrant was executed on Raoul [sic] Alburg's residence where law enforcement seized the remainder of the -- of the cocaine which totaled 155 kilograms which serves as the basis of the second superseding indictment in this case. |

. . . .

| THE COURT: | All right.  Counsel, I find this plea voluntarily and intelligently entered.  There is a factual basis for it and I will accept it. |
|---|---|

(Case No. 06-204, Doc. 231 at 4:11-25 to 5:1-15; 12:2-24; 17:2-18; 18:4 to 20:8; 21:2-4).

On May 21, 2009, Judge Surrick sentenced Defendant on both cases, *inter alia*, to a concurrent term of seventy-two months of imprisonment followed by five years of supervised release, and entered a written judgment against Defendant.  (*See* Case No. 06-204, Doc. 207; Case No. 07-796, Doc. 17).

On July 13, 2011, Defendant's term of imprisonment was completed and his term of supervised release commenced.  (*See* Case No. 06-604, Doc. 244; Case No. 07-796, Doc. 25).  On March 6, 2013, Judge Surrick transferred jurisdiction of Defendant's supervision to the State of Delaware pursuant to 18 U.S.C. § 3605.1.  (*Id.*).  The Honorable Leonard P. Stark accepted the transfer of jurisdiction on April 12, 2013.  (*Id.*); (*See also* District of Delaware Case No. 13-36, Doc. 3.).

### *2014 Case (Case No. 14-284)*

While on supervised release, Defendant committed another criminal offense in the Eastern District of Pennsylvania, which precipitated on June 2, 2014, the issuance of an arrest warrant for Defendant's arrest, (the "2014 case").  (Case No. 14-284, Doc. 1).[5]  On June 4, 2014, Defendant, (and others), was indicted and charged with one count of conspiracy to possess 5 kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  (Doc. 5).  This action was assigned to the Honorable Petrese B. Tucker.  On April 10, 2015, Defendant entered a guilty plea to the conspiracy charge.  (*See* Doc. 160-

---

[5]   The factual findings related to Defendants 2014 case are taken from Judge Surrick's Memorandum Opinion on November 13, 2020. (Doc. 276 at pg. 2)

8

162).  On June 14, 2016, Judge Tucker sentenced Defendant to term of 192 months of imprisonment followed by ten years of supervised release.  (Case No. 14-284, Doc. 248, 252).

In December 2024, President Biden commuted Defendant's sentence of imprisonment in the 2014 case pursuant to an executive grant of clemency and left his term of supervised release intact.  (Case No. 14-284, Executive Grant of Clemency, Doc. 346).  Accordingly, Defendant's term of imprisonment terminated and his supervision was transferred to the District of Delaware, (Doc. 347).

### *Procedural History*

On November 20, 2019, Defendant filed the underlying counseled motion for relief pursuant to Section 2255 of the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), 28 U.S.C. § 2255, ("Section 2255").  (*See* Case No. 06-204, Doc. 272).  At the time of filing this motion, Defendant was on supervised release.  The Government opposed the Section 2255 motion, arguing that Defendant was no longer "in custody," and, thus, could not bring a Section 2255 motion.  (Case No. 06-204, Doc. 274).  In a Memorandum Opinion, Judge Surrick construed the Government's response in opposition as a motion to dismiss the Section 2255 motion, and rejected the Government's argument finding that Defendant was "in custody" because his 2014 conviction tolled the supervised release requirement for his 2009 conviction.  (Case No. 06-604, Doc. 276).  Following Judge Surrick's Order, (Case No. 06-604, Doc. 277), the Government filed a response opposing Defendant's Section 2255 motion.  The issues presented in the motion have been thoroughly briefed and are ripe for disposition.

This case was reassigned to the undersigned on November 6, 2025.  (Case No. 06-604, Doc. 281).

## LEGAL STANDARD

Under the AEDPA, a prisoner serving a sentence in federal custody may move to vacate, set aside, or correct his/her sentence under Section § 2255 only on the grounds that the "sentence was imposed in violation of the Constitution and/or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a).  However, a motion under Section 2255 is a collateral challenge that is viewed less favorably than a direct appeal, and "relief under [Section] 2255 is available only when 'the claimed error of law was a

9

fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).  If a court finds that the judgment or sentence imposed was not authorized by law, or that there has been such a denial or an infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall either discharge the prisoner, resentence him, grant a new trial, or correct the sentence, as may appear appropriate.  28 U.S.C. § 2255(b).

Pursuant to Section 2255(b), "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  The United States Court of Appeals for the Third Circuit, (the "Third Circuit"), has "interpreted this to mean that where a petition alleges any facts warranting relief under [Section] 2255 that are not clearly resolved by the record, the District Court is obligated to follow the statutory mandate to hold an evidentiary hearing." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (internal citations and quotation marks omitted).  Here, this Court finds that an evidentiary hearing is not necessary or required.

**DISCUSSION**

As noted, Defendant argues that he is entitled to a new trial based on newly discovered evidence that demonstrates his conviction was obtained by false evidence.  (Doc. 272 at p. 2). Specifically, Defendant contends that the evidence "pertains to information regarding police corruption recently provided by law enforcement personnel who were personally involved in the investigation and/or the arrest of [Defendant]."  (*Id.* at p. 14).  Defendant also contends that the

10

evidence regarding police misconduct was not disclosed to his counsel in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*Id.* at pp. 20-22). In his reply brief, Defendant requests an evidentiary hearing. (Doc. 279 at p. 2). In its opposition, the Government argues that: (1) Defendant's motion does not state a cognizable claim, (Doc. 278 at pp. 5-18); and (2) Defendant's motion is untimely, (*id.* at pp. 18-23). For the reasons set forth, this Court finds that Defendant's motion is timely, and Defendant's December 27, 2007 guilty plea agreement precludes him from bringing the underlying motion.[6]

## I.    *Section 2255 "In Custody" Requirement*

A petitioner seeking *habeas* corpus relief must satisfy the prerequisite of being "in custody" at the time of filing the petition. *See* 28 U.S.C. § 2255(a). Section 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, [. . .], or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

*Id.* "[T]he 'in custody' requirement is liberally construed for purposes of *habeas corpus* . . . ." *Obado v. New Jersey*, 328 F.3d 716, 717 (3d Cir. 2003) (citing *Maleng v. Cook*, 490 U.S. 488, 490-92 (1989)). It is well-settled that a petitioner on supervised release or parole is considered to be "in custody" for purposes of a *habeas corpus* petition because the restrictions "significantly restrain [a] petitioner's liberty to do those things which in this country free men are entitled to do."

---

[6]    To the extent that Defendant claims that he was convicted based on perjured testimony, his claim fails because he admitted to the facts of his crime.

>    THE COURT:  Mr. Teagle, let's talk about the crimes that you are admitting. When you plead guilty, you admit that you committed the crimes. Do you understand that?
>
>    DEFENDANT: Yes, Your Honor.

(Case. No. 06-204, Doc. 231 at 7:22-25).

*Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *see also United States v. Baird*, 312 F. App'x 449, 450 (3d Cir. 2008); *United States v. Essig*, 10 F.3d 968, 970 n.3 (3d Cir. 1993) (finding a petitioner on or subject to supervised release is "in custody" for Section 2255 purposes). Indeed, Judge Surrick determined, and this Court agrees, that Defendant was considered to still be in custody when he filed this motion. (Case No. 06-604, Doc. 276).

As noted by Judge Surrick, a term of supervised release "commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release." 18 U.S.C. § 3624(e). However, a term of supervised release "does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." *Id.* In *Mont v. United States*, the Supreme Court of the United States held that "pretrial detention later credited as time served for a new conviction is 'imprison[ment] in connection with a conviction' and thus tolls the supervised-release term under §3624(e)." 587 U.S. 514, 514 (2019) (quoting *United States v. Mont*, 723 F. App'x 325, 328 (6th Cir. 2018)).

Here, Defendant was sentenced to seventy-two months of incarceration and five years, or 1,825 days, of supervised release. As Judge Surrick explained in his November 13, 2020, Memorandum Opinion:

> [Defendant] began his five-year term of supervised release on July 13, 2011. He was arrested on the new charge in Case No. 14-284 on or about June 2, 2014, before his term of supervised release had expired. [Defendant] was held on a detainer from the time of his arrest through his conviction and sentenced on the new charge. Judge Tucker later applied [Defendant's] pretrial detention time to the new conviction as time served. Neither [Defendant] nor the Government . . . presented any evidence concerning the termination of [Defendant's] supervised release. [This Court] independently reviewed the Delaware docket and found nothing in that

12

docket that indicates [Defendant's] supervised release ended. *See generally* D. Del. No. 13-36.

(Case No. 06-204, Doc. 276 at p. 4).

Therefore, as of the time of his arrest on June 2, 2014, Defendant had served 1,055 days of his 1,825 days of imposed supervised release on his consolidated 2006 and 2007 cases, with 770 days remaining. Defendant was then incarcerated on his 2014 case until December 22, 2024, when President Biden's executive grant of clemency commuted his sentence of imprisonment. Thus, Defendant's term of supervised release on his consolidated 2006 and 2007 convictions began again on December 22, 2024, and, as such, does not conclude until about January 31, 2027. Construing the "in custody" requirement liberally as the Court must, Defendant is clearly "in custody" on the sentence imposed in Case No. 06-204 for Section 2255 purposes.

## II.    *The 2007 Guilty Plea Agreement's Waiver of Rights.*

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). "Further, a defendant may waive the statutory right to appeal if he does so with knowledge of the nature and consequences of the waiver." *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015) (citing *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001)). Therefore, "appellate or collateral-attack waivers" will be enforced "when they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." *Id.*

Here, Defendant entered into a guilty plea agreement with the Government, which was accepted by the Court, and admitted to his guilt to conspiracy to distribute cocaine *and* conspiracy to commit money laundering. (*See* Case No. 06-204, Doc. 165; Case No. 07-796, Doc. 5). Defendant's guilty plea agreement provided the factual basis for the charges, advised Defendant of the statutory requirements, and an acknowledgement of the rights he was giving up by pleading

13

guilty.  Specifically, Defendant "voluntarily and expressly waives all rights to . . . collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to . . . collateral attack arises under . . . 28 U.S.C. § 2255[.]"  (Case No. 06-204, Doc. 165 at p. 5; Case No. 07-796, Doc. 5 at p. 5).  Though Judge Surrick carefully and appropriately considered the voluntariness of these waivers, in light of the motion to vacate the sentence, this Court must determine whether Defendant knowingly and voluntarily waived his right to bring a Section 2255 motion and whether such a waiver would work a miscarriage of justice.

*Knowing and Voluntary Waiver*

At his guilty plea hearing as outlined above, Defendant attested under oath to his capacity to enter into the guilty plea agreement, attesting that he was not under the influence of alcohol, drugs, or medication, and that there was no reason why he would have trouble understanding the guilty plea proceedings.  Defendant further testified that he was satisfied with his counsel and that he had had an opportunity to discuss the guilty plea with his counsel before the hearing.  Defendant made clear that he:  (1) read the guilty plea agreement before signing it; (2) understood each and every paragraph when he signed; (3) signed the guilty plea agreement of his own free will; (4) was not pressured into signing the guilty plea agreement; (5) was not promised anything in exchange for his plea; and (6) did not have any further questions regarding the guilty plea agreement.  When Defendant was directly asked about the waiver-of-rights section of the guilty plea agreement, Defendant responded that he had discussed it with his attorney and that he understood the provision. With this testimony, Judge Surrick ultimately found that Defendant had voluntarily, knowingly and intelligently entered a plea of guilty.  This Court finds no reason to disturb Judge Surrick's findings.

14

*Miscarriage of Justice*

If a plea agreement waiver is knowing and voluntary, "the 'appellate waiver must therefore be enforced unless [the court] identif[ies] the unusual circumstance of an error amounting to a miscarriage of justice . . . .'" *Fazio*, 795 F.3d at 426 (quoting *United States v. Erwin*, 765 F.3d 219, 226 (3d Cir. 2014)). "This determination depends on factors such as"

> the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Id.* (quoting *Erwin*, 765 F.3d at 226). The "miscarriage of justice" exception is to be applied "sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)). "The [Third Circuit] has recognized the miscarriage of justice exception in a few limited circumstances, such as where constitutionally deficient lawyering prevented the defendant from understanding his plea, where a defendant should have been permitted to withdraw a guilty plea[,] or where the waiver itself was the product of ineffective assistance of counsel." *United States v. Reed*, 2020 WL 1625626, at *3 (E.D. Pa. Apr. 2, 2020) (citing *United States v. Spivey*, 182 F. Supp. 3d 277, 280 (E.D. Pa. 2016)).

Here, Defendant has not argued that any of these limited circumstances apply to his case. *See Spivey*, 182 F. Supp. 3d at 280-81. In fact, Defendant does not *once* address his guilty plea agreement in his Section 2255 motion or reply brief. As such, based on this Court's review of the record and after carefully considering the arguments made by the parties, this Court finds that Defendant knowingly and voluntarily waived his right to collaterally attack his conviction or

15

sentence.  Therefore, no miscarriage of justice will result in enforcing the waiver provisions in the

plea agreement.  Accordingly, this Defendant's Section 2255 motion is denied.[7]

**CONCLUSION**

For the foregoing reasons, Defendant's Section 2255 motion is denied.  Further, this Court

finds that there is no probable cause to issue a certificate of appealability.[8]  An Order consistent

with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[7]  Defendant argues that he is entitled to a new trial because he satisfies the five requirements of *United States v. Kelly*, 539 F.3d 172 (3d Cir. 2008).  (Doc. 272 at p. 13).  However, *Kelly* is related to motions for a new trial pursuant to Federal Rule of Criminal Procedure, ("Rule"), 33, and not Section 2255. *Kelly*, 539 F.3d at 176.  "By its terms, Rule 33 applies only to cases in which a *trial* has occurred.  When the defendant has pled guilty, . . . no trial has occurred, and the Rule 33 remedy is unavailable."  *United States v. Collins*, 898 F.2d 103, 104 (9th Cir. 1990).  Here, Defendant chose to enter a guilty plea rather than exercise his right to a trial.  (*See* Case No. 06-204, Doc. 164, 165, 207; Case No. 07-796, Doc. 3, 4, 5, 17).  Therefore, to the extent that Defendant's underlying motion can be construed as a Rule 33 motion, it is without merit.

[8]  A district court may issue a certificate of appealability only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  A defendant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Lambert v. Blackwell*, 387 F.3d 210, 230 (3d Cir. 2004).  For the reasons set forth in this Order, this Court concludes that no probable cause exists to issue such a certificate in this action because Defendant's motion was barred by his guilty plea agreement.  Defendant has not demonstrated that reasonable jurists would find this Court's assessment "debatable or wrong."  *Slack*, 529 U.S. at 484.  Accordingly, there is no basis for the issuance of a certificate of appealability.